**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **THE BURLINGTON INSURANCE COMPANY,**<br>Plaintiff,<br>vs.<br>**BAY ONE SECURITY, INC.; GERMAN MOTORS CORPORATION;** and **FEDERATED MUTUAL INSURANCE COMPANY**,<br>Defendants. | CASE NO. 17-cv-04734-YGR<br><br>**ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 39, 41, and 51 |

This action stems from insurance coverage disputes arising out of a break-in at a car dealership and the subsequent lawsuits against security company Bay One Security, Inc., doing business as Bay One Security ("Bay One"). German Motors Corporation, doing business as BMW of San Francisco ("German Motors") and Federated Mutual Insurance Company ("Federated Mutual") filed claims against Bay One in San Francisco Superior Court (collectively, the "State Court Actions") alleging breach of contract and negligence with regard to Bay One's provision of security services. Bay One tendered the claim to plaintiff Burlington Insurance Company ("Burlington").

Pending here, plaintiff Burlington and defendants German Motors/Federated Mutual have filed cross-motions for summary judgment on Burlington's duty to defend Bay One in the underlying State Court Actions.[1] Defendants collectively argue that Burlington has a duty to defend Bay One because a potential for liability exists under the commercial general liability policy (the "CGL Policy") which Burlington issued to Bay One for the policy period December 5, 2014 to January 5, 2016. (Dkt. No. 41.) Burlington seeks a contrary ruling, namely that Burlington has no duty to defend Bay One because coverage is barred by exclusions with regard to

---

[1] On November 1, 2017, the clerk of the court entered default as to Bay One. (Dkt. Nos. 26, 28.)

(i) professional services, (ii), entrusted property and (iii) automobiles. (Dkt. No. 39.)

Having carefully considered the pleadings and fully-briefed motions, the hearing held on April 3, 2018, and for the reasons set forth below, the Court finds that no potential for liability exists under the CGL Policy. Accordingly, the Court **GRANTS** Burlington's motion for partial summary judgment and **DENIES** defendants' cross motion for partial summary judgment.[2]

## I. RELEVANT BACKGROUND

German Motors and Federated Insurance allege the following facts in the underlying State Court Actions:[3]

"Bay One Security contracted with GMC [German Motors Corporation] to provide securities services at GMC's dealership located at 1675 Howard Street, San Francisco, CA." (Dkt. No. 39, Declaration of Thomas Holden ("Holden Decl."), Ex. B ("German Motors Complaint") ¶ 5.) Bay One "promised that it would provide a licensed and trained and qualified security guard who would be posted at GMC's facility during the hours of 6:00 p.m. to 7:00 a.m. on specified days." (*Id*.) The security guard was to provide "regular walking patrols of the property, constant and vigilant monitoring of video screens[,] . . . remain vigilant for any signs of suspicious activity[,] . . . and properly make reports of such [suspicious activity] to the San Francisco Police Department." (*Id*.)

On June 1, 2015, "between approximately 4:00 a.m. and 4:30 a.m., one male individual broke into GMG's showroom via a very large plate glass window fronting Howard Street." (*Id*. ¶ 6.) The man "wandered around the dealership for a very lengthy period of time" and then "attempted to steal one of [GMC's automobiles] by driving it through a double set of glass doors leading from the interior of the showroom to the parking lot." (*Id*. ¶ 7.) "Failing to complete his escape in this manner, the thief then stole a different vehicle by driving it through the plate glass

---

[2] Defendants object to Exhibits 1 and 2 to the Supplemental Declaration of Thomas Holden pursuant to Federal Rule of Evidence 802 on hearsay grounds. (*See* Dkt. Nos. 47-2, 47-3, and 51.) The challenged exhibits are printouts from the websites of non-party insurers which depict various marketing materials. The Court finds that Exhibits 1 and 2 to the Supplemental Declaration of Thomas Holden are hearsay and **SUSTAINS** defendants' objections.

[3] Plaintiff does not contest that the German Motors and Federal Mutual alleged these facts in the State Court Actions.

2

windows fronting Howard Street, and ultimately destroyed the vehicle in a single-car crash. (*Id.* ¶ 7.) "Only after the thief crashed a vehicle through the front doors of the dealership . . . [did] the Bay One Security guard recognize[] that a crime was being committed." (*Id.* ¶ 8.) The security guard then "contacted the San Francisco Police Department." (*Id.* ¶ 9.) German Motors seeks damages for the damage to its dealership and automobiles "as well as lost profits and loss of use of the dealership building." (*Id.* ¶ 11.)

Here, Burlington issued Certified Policy No. 327BR00077 to Bay One with a policy period of December 5, 2014 to January 5, 2016. (*See* Holden Decl., Ex. A, Certified Policy No. 327BR00077 ("CGL Policy").) The premium was set at $10,307.00 annually, or approximately $858.92 per month. (CGL Policy at 3.) The CGL Policy states that:

> [Burlington] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. [Burlington] will have the right and duty to defend the insured against any 'suit' seeking those damages. However, [Burlington] will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply.

(*Id.* at 21.) Burlington concedes that the basic CGL Policy would apply but-for three exclusions. First, the CGL Policy contains a "Professional Liability Exclusion" which states that:

> This insurance does not apply to "any injury or damage" arising out of the rendering of or failure to render any professional services by or for you.

(*Id.* at 53.) Second, the CGL Policy contains a "Property Entrusted Exclusion" which provides:

**SCHEDULE**
**Operations:**
Security and Patrol Agencies
Warehouse – cold individual storage lockers
Warehouses – miniwarehouses

As respects the operations shown in the Schedule, this insurance does not apply to "property damage" to property of others:

1.     Entrusted to you for safekeeping

(*Id*. at 59.)  Third, the CGL Policy contains an endorsement entitled "Amendment – Aircraft, Auto or Watercraft Exclusion" (the "Auto Amendment") which replaces the Standard Auto Exclusion with the following language:

> This insurance does not apply to:
>
> **Manned Aircraft or Manned Aerial Vehicle or Unmanned Aircraft or Unmanned Aerial Vehicle, Auto or Watercraft**
>
> "Bodily injury", "property damage" or "damages" caused by or arising out of any "manned aircraft or manned aerial vehicle", "unmanned aircraft or unmanned aerial vehicle", "auto" or watercraft, including "loading or unloading".
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by any insured.

(*Id*. at 15 (bold in original).)

## II. Legal Framework

A "liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (1993) (quoting *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076 (1993), *as modified on denial of reh'g*). "Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor." *Horace Mann,* 4 Cal. 4th at 1081. Insurance "coverage is interpreted broadly so as to afford the greatest possible protection to the insured." *Harris v. Gulf Ins. Co.,* 297 F. Supp. 2d 1220, 1224 (N.D. Cal. 2003) (quoting *MacKinnon v. Truck Ins. Exchange,* 31 Cal. 4th 635, 648 (2003)). An insured seeking to establish that an insurer has a duty to defend "must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential." *Montrose*, 6 Cal. 4th at 300. "The duty to defend is determined by reference to the policy, the complaint, and all facts known to the insurer from any source." *Id.* An insurer can avoid the duty to defend only when the insured "can by no conceivable theory raise a single issue which could bring it within the policy coverage." *Id.* "Even the bare possibility of coverage is sufficient to trigger [the duty to defend]." *Belmonte v. Employers Ins. Co*., 83 Cal. App. 4th 430, 433 (2000) (citing *Montrose*, 6 Cal. 4th 287, 300).  However, an insurer has no duty to defend

where the potential for liability is "tenuous and farfetched." *American Guar. & Liability v. Vista Medical Supply*, 699 F. Supp. 787, 794 (N.D. Cal. 1988).

Exclusions in an insurance policy are "strictly construed against the insurer and liberally interpreted in favor of the insured." *Delgado v. Heritage Life Ins. Co.,* 157 Cal. App. 3d 262, 271 (1984). Exclusions "are to be interpreted by their plain meaning and will not be stretched to cover areas not intended by the clause." *Oliver Machinery Co. v. United States Fidenlity and Guarantee Co.*, 187 Cal. App. 3d 1510, 1514 (1986). "An insurer may rely on an exclusion to deny coverage only if it provides conclusive evidence demonstrating that the exclusion applies." *Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1038-39 (2002). Thus, the insurer must show "that the exclusion applies in all possible worlds." *Id*. at 1039.

The parties agree that summary judgment is appropriate given the absence of a genuine issue of material fact as to the basis for the motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Here, Burlington need only establish that one of the policy exclusions precludes coverage whereas defendants must prove that none of the exclusions apply.

**III. Discussion**

**A. Summary Judgment**

As a threshold matter, the parties agree that absent the exclusions, the basic policy would require the insurer to defend. Relevant here, Burlington argues that three policy exclusions preclude coverage, namely the Professional Services Exclusion, Property Entrusted Exclusion, and Auto Amendment. The Court addresses each. However, the Court notes as a preliminary manner that the common thread running through the arguments is whether a commercial general liability policy should be viewed as one which covers the very actions which the insured is hired to perform in the first instance. Accordingly, the Court begins with a brief overview of the topic.

"Commercial General Liability Policies are designed to protect an insured against certain losses arising out of business operations." *Bradfield v. Mid-Continent Cas. Co.*, 143 F. Supp. 3d 1215, 1232 (M.D. Fla. 2015). However, such policies "are not designed to provide . . . coverage against claims [that the insured's] work is inferior or defective." *Maryland Cas. Co. v. Reeder*, 221 Cal. App. 3d 961, 967 (1990); *see also Am. Home Assurance Co. v. SMG Stone Co., Inc.,* 119

5

F. Supp. 3d 1053, 1059 (N.D. Cal. 2015). Further, "commercial general liability insurance policies generally are not intended to insure the risks associated with the normal, frequent, or predictable consequences of doing business, and which business management can and should control or manage." *McGowan v. State Farm Fire & Cas. Co.*, 100 P.3d 521, 525 (Colo. App. 2004) (internal quotations omitted). For example, "general liability policies normally exclude coverage for faulty workmanship based on the rationale that poor workmanship is considered a business risk to be borne by the policyholder." *Id.* (citing *Bangert Bros. Constr. Co. v. Americas Ins. Co.,* 888 F. Supp. 1069 (D. Colo. 1995)). "In short, a liability insurance policy is not designed to serve as a performance bond." *F & H Constr. v. ITT Hartford Ins. Co.,* 118 Cal. App. 4th 364, 373 (2004); *see also McGowan*, 100 P.3d at 525. "In actually articulating the risks which will be covered by a liability policy common practice is to cover a broad risk at the beginning of the policy but to shift certain risks back to the insurance buyer by means of exclusions stated later." *Id.* (internal quotations omitted).

### B. Professional Services Exclusion

California courts define "professional services" as those "arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is *predominantly* mental or intellectual, rather than physical or manual." *Tradewinds Escrow, Inc. v. Truck Ins. Exch.*, 97 Cal.App.4th 702, 713 (2002) (emphasis supplied) (quoting *Hollingsworth v. Commercial Union Ins. Co.*, 208 Cal. App. 3d 800, 806 (1989)). "[A]s commonly understood, the term 'professional services' . . . generally signifies an activity done for remuneration as distinguished from a mere pastime." *Hollingsworth*, 208 Cal. App. 3d at 807. "Courts have applied the professional services exclusion broadly to bar coverage for damages resulting from a wide range of professional services that extend 'beyond those traditionally considered 'professions,' such as medicine, law, or engineering.'" *Energy Ins. Mutual Limited v. Ace American Ins. Co.*, 14 Cal. App. 5th 281, 293 (2017) (quoting *Hollingsworth*, 208 Cal. App. 3d at 806) (ear piercing)); *see also Amex Assurance Co. v. Allstate Ins. Co.*, 112 Cal. App. 1246, 1252 (2003) (plumbing); *Tradewinds,* 97 Cal. App. 4th at 713 (escrow services); *Antles v. Aetna Casualty & Surety Co.* 221 Cal. App. 2d 438, 439 (1963) (chiropractic treatment). "Judicial

6

authorities have also expressly recognized that 'the term has long ceased to be connected and restricted exclusively to those so-called learned professions.'" *Hollingsworth*, 208 Cal. App. 3d at 806 (quoting *Ocean Accident & Guarantee Corp. v. Herzberg's, Inc*. 100 F.2d 171, 173 (8th Cir. 1938)). The Ninth Circuit has stated that "to be considered a professional service, the conduct must arise out of the insured's performance of his specialized vocation or profession." *Bank of California, N. A. v. Opie*, 663 F.2d 977, 981 (9th Cir. 1981).

Here, the contract between Bay One and German Motors states that Bay One "shall furnish . . . professional uniformed, card carrying Security Officers." (Bay One Contract at 5.) The contract also states that Bay One would provide "professional security personnel." (*Id*., Ex. D at 4.) California's Bureau of Security and Investigative Services "licenses and regulates security guards, private patrol operators, proprietary private security officers, [and] proprietary private security employers." (*Id*., Ex. E at 5.) Under California law, an individual may not "perform[] the services of a watchman, guard, [or] patrolperson" unless "that person has applied for and received a license to engage in that business pursuant to this chapter." Cal. Bus. & Prof. Code §§ 7582.1(e), 7582.3(a). Security guards must complete 40 hours of initial training and an eight-hour refresher course each year. Any person "entering the employ of a licensee to perform the functions of a security guard" is also required to "complete a course in the exercise of the power to arrest" and in counter-terrorism. Cal. Bus. & Prof. Code § 7583.6(a).

The Court finds that the security services which Bay One furnished to German Motors were professional in nature for two reasons. First, Bay One's security officers were statutorily required to complete initial and continuing training courses including courses in the exercise of the power to arrest and in counter-terrorism. Cal. Bus. & Prof. Code § 7583.3(a), 7583.6(a); *see also Energy Ins. Mutual*, 14 Cal. App. 5th at 294. Second, the provision of security services requires "specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual." *Tradewinds*, 97 Cal. App. 4th at 713 (quoting *Hollingsworth*, 208 Cal. App. 3d at 806). Bay One contracted to provide a "licensed and trained and qualified security guard" capable of conducting "constant and vigilant monitoring of video screens in the on-site security booth . . . and otherwise remain vigilant for any signs of suspicious

7

activity in or about the [German Motors'] property." (Holden Decl., Ex. D at 5.) Further, the security guard was to "be diligently vigilant for any suspicious circumstances" and "promptly make reports of such to the San Francisco Police Department." (*Id*.) The security guard was thus required to exercise mental judgment with regard to identifying "suspicious circumstances" and "promptly" determining whether a situation warranted a police report.

Defendants attempt to characterize these responsibilities as merely "watching [] video monitors" but ignore the facts listed above. There mere fact that security services do not fall within the purview of a "learned profession" is not dispositive as California courts have found that services such as ear piercing and plumbing are professional in nature.[4] Similarly, the fact that security guard services involve some physical and manual tasks is not dispositive as California courts have deemed services involving physical and manual components as falling within the purview of professional services. *See Hollingsworth*, 208 Cal. App. 3d at 806) (ear piercing); *Amex*, 112 Cal. App. 4th at 1252 (plumbing).

Defendants also contend that applying the Professional Services Exclusion to bar coverage here renders "any policy [issued] to a security agency which employs security guards a prohibited 'fictional grant of coverage.'" (Dkt. No. 42 at 15.) Defendants do not persuade. An insurer "may select the risks it will insure and those it will not, and a clear exclusion will be respected." *California Traditions, Inc. v. Claremont Liability Ins. Co.*, 197 Cal. App. 4th 410, 418 (2011). Here, the "professional services exclusion simply reconfirms that the policy was *not* intended to cover the insured's mistakes in how it provides promised services to others." *Energy Ins. Mutual*, 14 Cal. App. 5th at 300 (emphasis in original) (citing *Tradewinds*, 97 Cal. App. 4th at 713).

Further, coverage under the CGL Policy is not illusory or fictional because it covered accidents unrelated to "how [Bay One] provides promised [security] services." *Id*. This is precisely what general liability insurance is designed to cover. *See CalFarm Ins. Co. v.*

---

[4] The Court notes that at least two state courts have found that security guards are professionals. *See Small v. Super Fresh Food Mkts., Inc.*, 2010 Del. Super. LEXIS 37, *9-10 (2010); *Robinson v. J.C. Penney Co., Inc.*, 977 A.2d 899 (Del. Sup. Ct. 2009); *see also Polet v. ESG Sec., Inc.*, 66 N.E.3d 972, 981 (Ind. Ct. App. 2016) (security firm has a "duty to use that degree of care which a reasonably prudent professional security firm would use").

8

*Krusiewicz*, 131 Cal. App. 4th 273, 287 (2005) (a "liability insurance policy is not designed to serve as a performance bond") (citing *F & H Constr. v. ITT Hartford Ins. Co.*, 118 Cal. App. 4th 364, 373 (2004)); *see also Energy Ins. Mutual*, 14 Cal. App. 5th at 306 (finding that the policy at issue was "a business liability policy, which provided coverage for accidental occurrences involving ordinary negligence, not for professional negligence"). Accordingly, "no reasonable insured could have expected that the [CGL Policy] was intended to cover injuries caused by an insured's failure to perform the very services it promised to render." *Energy Ins. Mutual*, 14 Cal. App. 5th at 299-300 (citing *Ray v. Valley Forge Ins. Co.*, 77 Cal. App. 4th 1039, 1047– 1048 (1999)).[5]

Finally, defendants contend that the "damages arose from the negligence performance of a purely non-professional service – ie [sic], the watching of video monitors to detect an intruder inside of the retail store." (Dkt. No. 42 at 18.) For this proposition, defendants rely on *Food Products* which found that the actions at issue were "merely [being performed] at the same time the insured was otherwise providing professional services to a third party." *Food Pro Int'l, Inc. v. Farmers Ins. Exch.,* 169 Cal. App. 4th 976, 991 (2008). *Food Products* is distinguishable. There, the court highlighted that "the only link" between plaintiff's "rendering of engineering services and [plaintiff's injury]" happened to be that the "allegedly wrongful actions occurred while [plaintiff] was on site to provide the professional services." *Food Pro Int'l*, 169 Cal. App. 4th at 992. Here, by contrast, a sufficient "link" between Bay One's provision of security services and the alleged damages exists because the damages to German Motors' automobiles and dealership occurred while Bay One was contractually obligated to provide "security and protection services" with regard to the same. (*See* Bay One Contract at 4.)

Finally, defendants rely on a district court case from the Sixth Circuit which interpreted a

---

[5] Defendants also argue that the exclusion does not apply because the security guard on duty during the theft had an expired license. (Dkt. No. 44, Declaration of David S. Rand ("Rand Decl."), Ex. B at 157-58, Ex. D.) However, an individual security guard's failure to comply with state licensing requirements is not relevant to the issue of whether the security guard services rendered by defendant were professional in nature. To find otherwise would have the perverse effect of encouraging security guards *not* to comply with state standards.

9

similar Burlington insurance policy. *See Burlington Insurance Company v. PMI America, Inc.*, 862 F.Supp.2d 719 (S.D. Ohio 2012). Like the CGL Policy at issue here, the policy in *PMI* did not define the term "professional services." Accordingly, the *PMI* court reasoned that "because 'professional services' [was] not defined, Ohio law require[d] the term to be narrowly construed so as to preserve coverage." *Id*. at 740-41. In holding that defendants' failure to position a kiln properly did not fall within the purview of "professional services[,]" the *PMI* court applied Ohio law and found that proper positioning of a kiln before welding was "much closer to the 'performance of routine, manual or physical processes' than to the advanced knowledge 'acquired by a prolonged course of study or specialized intellectual experience.'" *Id*. (quoting *Leighton v. Am. Econ. Ins. Co.,* 1997 Ohio App. LEXIS 5361, at *8 (Ohio Ct. App. 1997)).

This Court concurs with the *PMI* court's reasoning that the failure to define "professional services . . . requires the term to be narrowly construed so as to preserve coverage." However, defendant's argument nonetheless fails because *PMI* is distinguishable. Specifically, the *PMI* court's holding was based on an application of Ohio case law which defines professional services as those "requiring knowledge of an advanced type in a field of learning or science customarily acquired by a prolonged course of study or specialized intellectual instruction." *Leighton,* 1997 Ohio App. LEXIS 5361, at *8. No such requirement of "prolonged" study has been articulated in California. Thus, even under the appropriate standard of construing such exclusions narrowly, in this case, finding the exclusion applies remains appropriate.

Accordingly, Burlington's motion for summary judgment is therefore **GRANTED** and defendants' cross motion **DENIED** on this ground.

### C. Property Entrusted Exclusion

The Property Entrusted Exclusion states that the CGL Policy does not cover damage "to property of others: 1. Entrusted to you for safekeeping." (Dkt. No. 15 at 59.) The CGL Policy specifically lists "Security and Patrol Agencies" as falling within this exclusion. (*Id*.) Both State Court Actions allege property damage to German Motors' automobiles and dealership as a result of Bay One's failure to provide adequate "patrol" and "security services" with regard to the same. (German Motors Complaint ¶¶ 2, 5, 6, 10, 14 and 18.) The contract between German Motors and

Bay One provides that Bay One would furnish "surveillance . . . . [l]ock up or unlocking" as well as "actively look for suspicious activity. . . . [monitor] physical damage, suspicious circumstances and report immediately as appropriate . . . . [and] prevent theft, vandalism, illegal activity and [] report any issues quickly. (Holden Decl. Ex. D ("Bay One Contract") at 4.)

Burlington argues that the plain language of the exclusion contemplates the nature of services Bay One provides and then excludes them from coverage; namely for which Bay One was providing patrol and security services. Defendants counter that the Property Entrusted Exclusion applies only to "personal property subject to bailment or similar arrangement." *See Pacific Indemnity Co. v. Bellefonte Ins. Co.,* 80 Cal. App. 4th 1226, 1232-33 (2010). Defendants further argue that Bay One was never given "possession, custody, or control of the cars" and therefore, they have not been "entrusted" to Bay One.[6] (Dkt. No. 42 at 23.)

The Court finds the term "entrusted" to be ambiguous under California law and the GCL Policy. (*See* CGL Policy at 59.)

Given the arguments on both sides, and the Court's ruling with regard to the Professional Services Exclusion, the Court need not reach this issue.

### D. Auto Amendment

Burlington concedes that the Standard Auto Exclusion does not bar coverage here because the automobiles involved in the incident were not owned, operated, or entrusted to others by Bay One. However, Burlington's position is that the Auto Amendment specifically "replaces" the Standard Auto Exclusion and removes the language which indicates that the exclusion only applies to automobiles "owned or operated by or rented or loaned to any insured." (*Compare* CGL Policy at 15, 29.) Pursuant to the Auto Amendment, the "insurance does not apply to"

---

[6] Defendants also assert that the Property Entrusted Exclusion was not "conspicuously displayed" and thus is invalid. *See Haynes v. Farmers Ins. Exch.,* 32 Cal. 4th 1198, 1203 (2004). The Court has reviewed the CGL Policy and disagrees. The exclusion like all other exclusions and amendments is labeled at the top of the page in large bold letters.
Defendants further aver that the Property Entrusted Exclusion is invalid because it renders "the policy's coverage a total nullity." (Dkt. No. 48 at 18.) However, as noted above, defendants ignore the fact that even with this exclusion the CGL Policy still covers damage to property which was not entrusted to Bay One such as Bay One's own property as well as bodily harm to Bay One's employees and certain third parties.

11

"property damage or damages caused by or arising out of any . . . auto." (*Id*. at 15 (internal quotations omitted).)

The Court finds that the damages alleged in the underlying State Court Actions were not "caused by" and did not "arise out of" an automobile. Specifically, plaintiffs in the State Court Actions allege that the damages arose from Bay One's "negligen[ce] in the services it undertook to provide," namely its "provision of a security guard to patrol GMS's dealership facility, to monitor real time video cameras and screens[,] . . . to adequately screen for employment and train those individuals hired . . . and to properly notify the San Francisco Police Department in the event of any suspicious or criminal activity." (German Motors Complaint ¶¶ 17–21.) Read liberally in favor of coverage, the fact that the automobile was the instrumentality of the cause of damages does not render the exclusion operative.

Accordingly, the Auto Exclusion does not preclude coverage.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Burlington's motion for summary judgment and **DENIES** defendants' cross motion on the ground that the Professional Services Exclusion precludes coverage.

The parties shall provide a form of judgment approved as to form within **five business days**.

This terminates Dkt. Nos. 39 and 41.

**IT IS SO ORDERED.**

Dated: April 10, 2018

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**